## THE STATE OF IOWA *v.* CALLENDINE.

Where a party is put upon trial for a criminal offense, it is not within the scope of the authority of either the attorney for the state, or of the court, to take the case from the jury, of their own arbitrary will, and without a peremptory and controlling cause, and again hold him to trial on the same charge, although it be newly presented; and such a proceeding amounts to an acquittal, and may be pleaded as such.

A party accused with crime, has rights which the law recognizes and protects, and the constitutional command that a person shall not be twice

put upon trial for the same offense, cannot be trifled with, and is not subject to the arbitrary will of either the public prosecutor or the court.

To permit either the court, or the attorney for the state, to stop a criminal trial, and bind over or commit the accused, to answer to the same or another indictment, at a future time, because the testimony fails, or a witness is wanting, in consequence of his name not being upon the indictment, would be trifling with the accused to a degree which cannot be tolerated.

The provisions of chapter 176 of the Code, do not extend the powers of the court so far as to permit the court to arrest a criminal trial, and discharge the jury, because of the exclusion of a witness, and to hold the defendant to answer to a subsequent indictment for the same offense.

Where to an indictment for having in his possession forged and counterfeit bank bills, with intent to defraud, knowing them to be counterfeit, the defendant filed a special plea, averring that at a former term of the court, he was legally and regularly indicted for the same offense; that he pleaded to the indictment, and issue was joined thereon; that a jury was regularly impanneled and sworn, and the trial progressed to the examination of one K. and one M., as witnesses on the part of the state, when, on motion of the court, the indictment was dismissed, and the defendant discharged from the same; and that said proceedings were a bar to further proceedings against him on the present indictment, to which plea a demurrer was sustained by the court; *Held*, That the court erred in sustaining the demurrer.

In an indictment for having in possession forged and counterfeit bank bills, with intent to defraud, &c., it is not necessary to allege an intent to defraud any particular person or corporation; nor is it necessary to aver a felonious or wilful intent to defraud.

In an indictment for having in possession forged and counterfeit bank bills, with intent to defraud, &c., a copy of the bills should be set out in the indictment, or a reason given for not doing so.

Section 2630 of the Code, means a bill purporting to be issued by a company or bank named, which company or bank is, in fact, authorized, &c., and not a bill purporting that the company or bank is authorized, &c.

Where an indictment for having in possession forged and counterfeit bank bills, with intent to defraud, &c., described the bills as follows: "Thirteen false, &c., bank bills, numbered 1566, 1559, 1570, &c., purporting to have been issued by a corporation duly authorized for that purpose by the state of Illinois, to-wit: purporting to be bank bills of the bank of Belleville, state of Illinois, each of said bank bills being of the denomination of two dollars;" *Held*, That the bills were not sufficiently described.

Neither the present nor the past statutes of this state, dispense with the leading requisites of indictments.

*Appeal from the DesMoines District Court.*

WEDNESDAY, APRIL 13.

AT the April term of the district court, 1858, the defendant was indicted for having in his possession thirteen forged and counterfeit bank bills, with intent to defraud, knowing them to be so counterfeited. The defendant filed a motion for a change of venue, a motion to quash, and a demurrer, which were successively overruled; and he then filed a plea of not guilty, and a special plea. To the special plea a demurrer was filed, and sustained by the court. The defendant was convicted, and sentenced to the penitentiary for five years, from which judgment he appeals. The other material facts are stated in the opinion of the court.

*Browning* & *Tracy*, for the appellant, referred to *Harker* v. *The State*, 8 Blackf., 540; *Mount* v. *The State*, 14 Ohio, 292; Whart. Crim. Law, 513, 544; 2 Bishop's Crim. Law, 659, 675, and note 4; *Wright* v. *The State*, 5 Ind., 597; *Commonwealth* v. *Cook*, 6 Searg. & R., 577; *United States* v. *Shoemaker*, 2 McLean, 114.

*C. Ben Darwin*, for the state, cited *The United States* v. *Coolidge*, 2 Gallison, C. C., 366.

WOODWARD, J.—As the last plea determines the case, if found true, and presents an interesting and important question, we turn our first attention to it.

This plea avers, that at the November term, 1856, of the same court, he was legally and regularly indicted for the same offense; that he pleaded to the indictment, and issue was joined thereon; that a jury was regularly impanneled and sworn, and the trial progressed to the examination of one Healy and one McDonald, as witnesses on the part of the state, when, on motion of the court, the indictment was dismissed, and the defendant was discharged from the same. He makes profert of a copy of the record, and concludes by

averring that those proceedings are a bar to further proceedings against him on the present indictment.

That which purports to be the record entry recites, that the state proceeded in offering testimony, when it appearing that one M'Donald was the only witness on the part of the state upon whom it relied, and that his name was not indorsed upon the indictment, he not having appeared before the grand jury, and that he was objected to as a witness for that reason ; thereupon, by order of the court, the indictment was dismissed, and the prisoner discharged therefrom, but was afterwards held to bail for the further action of the grand jury, which was then in session.   The prosecutor demurred to this plea, and the demurrer was sustained.

We shall proceed to show that the court erred in sustaining the demurrer; for the defendant being put upon trial under charge of a public offense, it is not within the scope of the authority, of either the prosecuting attorney, or of the court, to take the case from the jury of their own arbitrary will, and without a peremptory and controlling cause, and again hold him to trial on the same charge, although it be newly presented.   Such a proceeding amounts to an acquittal, and may be pleaded as a bar.

The case of *The State* v. *Wright*, 5 Ind., 290, was the following :   The defendant was arraigned and put on trial on a Saturday, which was the last day of the term in that county, and the court sat in another county on the next Monday.   At twelve o'clock at night, the trial had not come to a close, and the court believing that they could set no longer in that county, dismissed the jury, and held the defendant to bail for appearance at the next term.   The supreme court held, that under the circumstances, the court could have continued to sit until the conclusion of the trial, and that there was no necessity for dismissing the jury and withdrawing the case; and held that the defendant was entitled to a verdict, and that the proceeding was equivalent to an acquittal.

The case of *The United States* v. *Shoemaker*, 2 McLean,

114, points out the true line of distinction in regard to discontinuing a criminal action.   It is to be remembered that an accused has rights which the law recognizes and protects, and that the constitutional command that a person shall not be twice put upon trial, cannot be trifled with, and is not subject to the arbitrary will of either the public attorney or the court.

In the case in  McLean, the defendant was indicted for taking letters from the mail.   The jury was impanneled, and witnesses were sworn, when the prosecuting attorney abandoned the prosecution and entered a *nolle prosequi*.

In the consideration of the question by the learned judge, he considers that if this power exists in the prosecutor, it is subject to no limit, and might be made the means of great vexation to persons charged with crime ; and that it might even be used experimentally to draw out the testimony, and see if it were sufficient, or might be made stronger.   He says the attorney may enter a *nol. pros.* before the trial is entered upon, and it will be no bar, but that after plea, and jury sworn, or after the evidence is in, he cannot do it.

Neither is it altogether, and at all times, within the discretion of the court to stop the prosecution, and still hold the accused to answer to the same offense on a future charge. It may discharge the jury under peculiar circumstances, in cases of necessity, as upon a sudden indisposition of a witness, a juror, or the court, or a final difference of opinion among the jurors; for, over circumstances of this nature, neither the court, the attorney, nor the parties, have any control.   But, to warrant this course, there should be some emergency—some circumstance over which neither the court nor attorney has control.   To permit either to thus stop the trial, and bind over or commit the accused to answer to the same, or another indictment, at a future term, because the testimony fails, or a witness is wanting in consequence of his name not being upon the indictment, would be trifling with the accused to a degree which cannot be tolerated.

But still further :   This case is like that first cited from

The State of Iowa v. Callendine.

Indiana, in the circumstance that the supposed necessity did not exist.    In that, it was competent for the court to continue the trial to its close.    In this, the court supposed that the witness could not be sworn, because he had not been before the grand jury, and therefore his name was not upon the indictment.    But this necessity did not exist.    The supreme court of the state had decided that, though this may have been true under the former law, it was not so under the Code, and that such a witness might be examined. Even the species of necessity supposed did not exist therefor, but the discharge arose merely from the will of the court.

It is not considered of any importance in the consideration of the question, that the defendant moved the exclusion of the witness.    Even supposing the ruling of the court to be correct, and that the witness could not be examined, the motion of the defendant was but the exercise of an ordinary legal right pertaining to every person accused, and the effect was but the familiar one of the opposite party being left, by the rejection of his witness, without testimony sufficient to support his indictment.    The legal right to object to a witness, cannot be exercised under so heavy a penalty as to be held, by the success of the motion, to a new charge and a new trial.    And if the result of such an attempt happens to be the disarming of the prosecution, it is but one of those chances for life, to which an accused is entitled.    If there be a fault, it is not on his side, but on that of the prosecution.

In the case of *Commonwealth* v. *Wade*, 17 Pick., 395, the court say, there was no necessity—no unforeseen cause of delay—no accident—no mistake—no extraordinary exigence; but it was an ordinary case of a good indictment, but a failure in the proof.

In 1 Chit. Cr. Law, 631, it is said that it would be absurd to suppose, that after the evidence is given, the prosecutor might be allowed to withdraw a juror, merely because the proof would not amount to conviction ; or to allow a *nol.*

*pros.* because the proof was not sufficient to convict. And why would it not be equally absurd to hold that the judge was authorized to discharge the jury, because the attorney had omitted to call a witness before the grand jury, and to indorse his name—even supposing that necessary—and still more when it is not so. The case is not relieved by the fact that the judge, and not the attorney, did it. It is the occasion, or the cause upon which it is done, that has weight, and not the officer by whom it is done.

In *The Commonwialth* v. *Cook*, 6 S. & R., 577, the court held that a discharge of the jury once sworn, in a criminal case, was an acquittal of the defendant.

In the *U. S.* v. *Perez*, 9 Wend., 579, (6 Curtis, 194), the court hold this general language : The law has invested courts of justice with the authority to discharge a jury whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would be defeated. This language would seem to leave it discretionary, but the case before them was only one where the jury could not agree ; and the court say, further : " To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious reasons."

The preceding cases may be regarded as giving definiteness to the general terms of the last one, and as exponents of the " urgent circumstances," which will warrant the exercise of the power.

The provisions of the Code, contained in chapter 176, do not extend the power so far as the present case. Some of the instances there named, are such as were previously recognised by the law ; and one or two of them are such as must stand, if at all, by virtue of the statute alone ; but all of them are of the nature of unforeseen emergencies. The case before us is one of want of forethought—want of provision ; and differs in nothing from one in which the prosecutor has not summoned a certain witness, or in which a wit-

The State of Iowa v. Callendine.

ness is objected to as incompetent, and the state left without testimony.

Considering, then, the rights of one accused—that he is entitled to a trial and verdict—and that he cannot be subject to have his trial cut short, on account of a want of preparation, or of proof, on the part of the state, and still be held to a future trial, or to answer a future indictment, at the convenience, or the arbitrary will, of another, we are of the opinion, that the proceedings operate as an acquittal of the defendant.

As to the objection that the plea does not set up a former conviction or acquittal, we need only reply, that in the nature of the case, the defendant cannot plead an acquittal in form and technically, but the facts are considered as amounting to that, in the cases which hold them to constitute a discharge. This court is, therefore, of opinion that the district court erred in sustaining the demurrer to this plea, and in rejecting the evidence offered to support it.

Some questions made by the demurrer of the defendant to the indictment, and by his motion to quash, call for a portion of attention.

The first cause of demurrer is, that the indictment does not allege an intent to defraud any person or corporation. The demurrer overlooked section 2927 of the Code, which provides that a general allegation of an intent to defraud, shall be sufficient.

The third cause of demurrer is, that the indictment does not aver a felonious or willful intent to defraud. This is a case where the words of the statute, without the addition of others, are sufficient. That requires only " an intent to defraud," and does not require that these should be qualified by the terms " willful," or " felonious."

The fourth cause of demurrer is, that the indictment does not set forth, nor sufficiently describe, the bills, nor give any reason for not so doing. They are described as " thirteen false, &c., bank bills, numbered 1566, 1559, 1570, &c., purporting to have been issued by a corporation, duly au-

thorized for that purpose by the state of Illinois, to-wit: purporting to be bank bills of the bank of Belleville, state of Illinois, each of said bank bills of the denomination of two dollars."

As to that portion of the indictment which is descriptive, it is not certain that a court can, from the face of it, alone, without a bill being annexed, determine whether they are properly described. Calling them bank bills—on such a bank—of such a denomination—is so far descriptive; but it is more than doubtful if the numbers are so, without the letter. In every issue of bank bills, there are two or more bills of the same number, and it is the letter only which distinguishes or identifies them. The rest of the description relates to the purport of them. The statute definition is, a bank bill, issued, or purporting to be issued, by a corporation or company, duly authorized for that purpose by any state, &c.

The "purport" is that which appears on the face of an instrument. 1 Whart. Cr. Law, sec. 307; 2 Whart. Cr. Law, No. 264; 3 Arch. Cr. Pl. & Pr., 536–27. And Wharton says, that, under this term, should be given no other description than its nature, as a bond, a bank bill, &c. But it is usually intended to express the substance and effect, as appears from the face, in distinction from "tenor," which means a copy, or exactness. Then, a bill may purport to be one of a certain bank, but how can it purport that the bank, or corporation, is one authorized by the laws of a state. We will not say that no bank bill did ever purport this—that is, that the company is duly authorized by law; but no such an one has ever fallen under our observation. The statute means a bill purporting to be issued by a company (or bank) named, which company is, in fact, authorized, &c., and then provides, by another section, that its existence may be proved by reputation, without producing the charter.

Now, upon the face only of an indictment, a court can-

not say whether the bills are described, or whether they purport that which the law requires, in the definition of the offense. To do this, the bill must be set out. And perhaps this is one reason which gives force to the other objection contained in this cause of demurrer.

The other objection is, that the bills are not set out, nor is there any reason given for the omission. The books agree in holding, that the instrument, in the class of cases connected with forgery, must be set out, or a reason given for not doing it. The reason commonly given is, that the court may see that it is one which comes within the statute. But this may not be the only one. 1 Whart. Cr. Law, sec. 306 ; 2 Ib., No. 264 ; 3 Arch. Cr. L., Pl. & Pr., 536.

Neither our present, nor the past, statutes of this state, have ever been held to dispense with the leading requisites of indictments. The Code, in section 2916, declares that an indictment shall not be quashed, if (among other requisites), it set forth the charge so clearly that the accused can plead the judgment in bar, and if, (when material), the name of the injured party be set forth, or stated not to be known to the grand jury. These, and similar provisions, have never been so construed as to obviate the necessity of the hitherto prominent features of a criminal charge.

This indictment appears to us to be a very naked one. It gives neither the tenor nor the purport of the bills; it does not set them out in any manner or degree—nor does it give the letters. When this cannot be done, as when the prosecutor has not possession of the instrument, a statement of the fact excuses, but when he can do it, as appears in the present case, it is necessary to do it, that the court may judge of it, and that the accused may have the benefit of it.

For these reasons, we are of opinion that the demurrer to the indictment should have been sustained. Wherefore, it is considered that there is error in the rendition of the judgment aforesaid, and the same is reversed.