### THE STATE v. FALCONER.

1. **Criminal Law**: TWICE IN JEOPARDY: FACTS NOT AMOUNTING TO. Where on the trial of a criminal case the state introduced evidence and rested, and the defendant introduced his evidence, and the district attorney then moved for leave. to introduce a witness who had not been before the grand jury, and of whose examination notice had not been given, and the motion was sustained, and the defendant then elected to have the cause continued, (Code, § 4421,) which was done accordingly, *held* that defendant could not object to another trial on the ground that, by the proceedings above referred to, he had already been put in jeopardy. (*State v. Parker*, 66 Iowa, 586, followed.)

2. ———: CONTINUANCE: ABSENCE OF WITNESS: INSUFFICIENT SHOW-ING. A defendant in an indictment is not entitled to a continuance on the ground of the absence of a witness, where it appears from his show-ing that he has no reason to believe that the witness would swear to anything more than that he could not identify the defendant as the guilty party,—as such testimony would not be material.

3. ———: ALIBI: CONFLICTING EVIDENCE: QUESTION FOR JURY. In this case the evidence as to the presence and participation of defendant in the crime was contradictory and about equally balanced as to the number of witnesses, but *held* that it was the sole province of the jury to weigh it, and that their verdict could not be disturbed on appeal.

4. ———: PROCEDURE: ADMISSION OF TESTIMONY OUT OF TIME. The trial court has a discretion, under subd. 4, § 4420, of the Code, to allow the state, in a criminal case, to examine a witness in chief after the de-fendant has examined some of his witnesses. (Compare *State v. Flynn*, 42 Iowa, 164.)

5. **Practice**: IMPEACHING WITNESSES: IRRELEVANT MATTER. A wit-ness may not be impeached or discredited as to matters that are not rele-

vant to the issue. (See cases cited.) And so, where a witness, who had identified defendant as the guilty party, stated that he thought he would be able, as a rule, to recognize for ten years after the transaction any man with whom he had done business, *held* that it was incompetent to introduce other witnesses to impeach his testimony as to the reliability of his memory in that regard.

## *Appeal from Hancock District Court.*

### SATURDAY, DECEMBER 18.

THE defendant was convicted of the larceny of eleven head of cattle, and sentenced to a term of imprisonment in the penitentiary, and from that judgment he appeals.

*P. M. Sutton*, *W. A. Foster* and *James Allison*, for defendant.

*A. J. Baker, Attorney-general*, for the State.

REED, J.—It is charged in the indictment that one James W. Bailey had the property, which is alleged to have been stolen in his possession, as the agent and servant of the owner thereof, and that he embezzled and fraudulently converted the same to his own use, and that this defendant and five others aided and abetted him in the commission of said crime. It was proven on the trial that, in the spring of 1882, Bailey received into his possession, in Marshall county, about 800 head of cattle belonging to parties living in that and adjoining counties, which he undertook to herd during the summer, and that he drove them to Hancock county, where he herded them on the range. During the summer he made two shipments of cattle taken from the herd. The last shipment was made on the nineteenth of August, and consisted of three car loads, and included the cattle mentioned in the indictment. The cattle were taken and disposed of by Bailey without the knowledge or consent of the owners, and with the intent to fraudulently convert them to his own use. Those shipped on the nineteenth of August were taken out of the herd on the.seventeenth, and were driven

to Garner, a station on the Chicago, Milwaukee & St. Paul Railway, where they were loaded onto the cars, and from there were taken to Milwaukee, and there were sold. Bailey was assisted in separating them from the herd, and driving them to Garner, and loading them on the cars by another person, who also accompanied him to Milwaukee, and was present when the cattle were sold. The claim of the state is that the defendant is that person.

I. The cause came on for trial at the September term, 1884, of the district court, and a jury was impaneled and sworn to try it. After the state had introduced evidence in support of the indictment and rested, and the defendant had introduced his evidence, the district attorney filed a motion for leave to examine a witness who had not been examined before the grand jury, and of whose evidence the notice prescribed by section 4421 of the Code had not been given. This motion was supported by the affidavit of the district attorney, setting out the substance of what he expected to prove by the witness, and the diligence he had used in procuring evidence in the case; also alleging that he did not learn of the witness, or what his testimony would be, until after he had entered upon the trial of the cause. The court sustained the motion; and, the defendant thereupon electing to have the cause continued, the jury was discharged, and the cause continued to a subsequent term. At the next term of the court the defendant pleaded these facts as a bar to the indictment, claiming that, having once been put upon trial thereon, he could not again be put in jeopardy on the same charge. The district court sustained a demurrer to this plea.

1. CRIMINAL law: twice in jeopardy: facts not amounting to.

The case, in its facts, is not materially different from *State v. Parker*, 66 Iowa, 586. In that case the jury had been sworn, and one witness examined in support of the indictment, when the district attorney filed a motion for leave to examine witnesses who had not been examined before the grand jury, which was granted, and the defendant thereupon elected to

have the cause continued, which was done. At a subsequent term he pleaded this proceeding in bar, but we held that he had not been put in jeopardy by the mistrial, within the meaning of the federal constitution, (assuming that it was applicable to the case;) nor had he been acquitted of the offense charged, within the meaning of article 1, § 12, of the constitution of this state. It can make no difference that the jury was discharged at a later period in this case than in that. A trial was entered upon in both cases. If it could be said that the defendant, in either case, was put in jeopardy of life or liberty, such jeopardy was created by the fact that he was put upon his trial on the indictment against him; so that the proceeding in the one case was as effective as in the other. There is no distinction in principle, then, between this case and *State v. Parker*. The ruling of the district court on the demurrer to the plea of the former acquittal is correct.

II. At the term at which the cause was tried the defendant filed a motion for a continuance on the alleged ground of the absence of a material witness, which motion the district court overruled. Some time before the term the district attorney served a notice on the defendant that he would examine the same witness on the trial. A few days before the commencement of the term, defendant and his counsel ascertained that the witness had not been subpœnaed by the state. They then instituted an inquiry with reference to him, and ascertained that he was absent from the state, and that his testimony could not be obtained in time to be used at that term. They also instituted an inquiry to ascertain what the substance of his testimony would be. The result of their inquiries is stated in the affidavit filed in support of the motion, in the following language: "That said Sutton (who is counsel for defendant) made careful inquiry of what said Perrigo (the witness) had said about this defendant and this cause, and learned from reputable and reliable parties that said Perrigo claimed that he could not corroborate witness

2. ——: continuance: absence of witness: insufficient showing.

John T. Bush; that while he saw the alleged stolen cattle at the same time that said Bush saw them, and also saw, at the same time, the man with them, and in charge of them, he was not able to identify said man as the defendant." In another part of the affidavit it is stated that defendant expects to prove by the witness that he saw the man who assisted Bailey in driving the cattle from the herd to Garner, and in loading them on the cars, and that defendant is not that person. But neither defendant nor his counsel had seen the witness, or had any communication with him.. Their only information as to what his testimony would be was that communicated to Mr. Sutton by the persons of whom he had inquired. The information communicated was simply that the witness had stated that he was not able to indentify the defendant as the man who was with the cattle at the time in question. The court could not presume that the evidence of the witness would be any more favorable to the defendant than was indicated by this statement. It could not presume that he would swear to any fact not covered by the statement he had made. It appears to us that the fact that the witness could not identify the defendant as the man he saw with the cattle was quite immaterial. To say that he was not able to identify him as the man who was with the cattle is a very different thing from saying that he is not that man. The fact that he was not able to identify him as the person who was with the cattle has not necessarily any tendency to show that he is not that person. It was incumbent on the defendant to show, in support of his motion, that the testimony of the absent witness would be important and material to his defense. We think he failed to do that, and the court properly overruled the motion.

III. The defendant introduced evidence tending to prove that when the cattle were taken from the herd, and driven to

3. ——: alibi: conflicting evidence: question for jury.

Garner, and loaded on the cars, he was in Marshall county, which was the place of his residence, and that he remained there for several

days after that. The pivotal question of fact in the case was whether the defendant is the person who assisted Bailey to drive the cattle from the herd to Garner, and loaded them on the cars, and who accompanied him to Milwaukee; and counsel for the defendant insist that the finding of the jury on that question is so manifestly against the evidence that the verdict should be set aside on that ground. Bailey was examined as a witness by the state, and he swore positively that the cattle were taken from the herd and shipped to Milwaukee in pursuance of a plan previously entered into between him and defendant, and that the defendant is the person who assisted in taking them to Garner and loading them on the cars, and that he accompanied him to Milwaukee and shared in the proceeds of the sale. He also testified that defendant came to the herd on the seventeenth of August, and that the cattle were separated from the herd the next morning, and driven to within five or six miles of Garner on that day, and that they were driven into the yards of the railroad company, and loaded onto the cars on the next day, and that they reached Milwaukee on the twenty-first, and that the cattle were sold on that day, and that he and defendant went from Milwaukee to Chicago on the twenty-second, and returned to Garner on the twenty-fourth. He is abundantly corroborated as to the fact that the cattle were taken from the herd and shipped at Garner, and that he was assisted in this work by another man. Two witnesses who saw this man at the herd gave it as their belief that defendant is that person. The station agent at Garner, who made the contract with Bailey, and the person who was with him at the time of the shipment of the cattle, was of the same opinion. A witness who resided between the range and Garner, and at whose place the parties stopped when they were driving the cattle to Garner, testified positively that defendant is the man who was with Bailey at the time. An employe of the railroad company who was present when the cattle were loaded, and sealed the cars, also testified posi-

tively to his identity. Other witnesses who saw the parties with the cattle express the same opinion with more or less of confidence. The commission merchant who made the sale of the cattle at Milwaukee testified with positiveness that the defendant is the person who was with Bailey at the time, and that he represented himself as one of the owners of the cattle.

On the other hand, as many as eight or ten witnesses, who are personal acquaintances of the defendant, swore positively that he was at St. Anthony, in Marshall county, on the seventeenth of August, and that he remained there until late in the evening. The witnesses testified with particularity to the matters of business which were transacted by defendant and themselves on that day, and they produced records and *memoranda* which they testified enabled them to fix with certainty the date of the transactions that they claimed occurred on that date. Other witnesses testified with positiveness to his presence in Marshall county up to the twenty-fourth of August.

It is manifest, from this statement of the testimony, that the witnesses on the one side or the other were either mistaken as to the facts about which they testified, or the dates of their occurrence, or that they recklessly or corruptly testified falsely. The main question in the case was as to the weight and credit which should be given to the testimony of the different witnesses. The determination of that question was within the peculiar province of the jury. It has so often been held by this court that we cannot interfere with the verdict of the jury when there is a clear conflict in the testimony, that it cannot now be necessary to restate the reasons of the rule, or cite the cases in which it has been held; and this rule is applicable in criminal as well as in civil actions. Under it we cannot disturb the verdict in the present case on this ground.

IV. After the state had rested, and the defendant had

examined a number of witnesses in his behalf, the district

**4. ——: procedure: admission of testimony out of time**

attorney asked and obtained leave to examine a witness in support of the indictment, who had not appeared when the evidence for the state was closed. The order of the trial in criminal cases is prescribed by section 4420 of the Code. It is there provided that, after the indictment has been read to the jury, and the opening statement of counsel made, the state may offer the evidence in support of the indictment, after which the defendant or his counsel may offer his evidence in support of his defense. Subdivision four of the section is as follows: "The parties may then, respectively, offer rebutting evidence only, unless the court, for good reasons, in furtherance of justice, permit them to offer evidence upon their original case." By this latter provision the court is vested with a discretion to permit the introduction of evidence out of the order prescribed in the former part of the section. See *State v. Flynn*, 42 Iowa, 164. This discretion does not appear to have been abused in the present case.

V. The commission merchant who made the sale of the cattle in Milwaukee, and who identified the defendant as the

**5. PRACTICE: impeaching witnesses: irrelevant matter.**

person who was there in company with Bailey when the sale was made, testified, on cross-examination, that it was his custom to take particular notice of the men with whom he had transacted business, and that he thought he would be able, as a rule, to recognize any man with whom he had transacted business two years after the transaction in which he had met him. Counsel for defendant then called his attention to two men in the court-room, and, in answer to questions asked him, he stated that he thought he recognized one of them, and expressed the opinion that the man had at some time been in Milwaukee with cattle for a firm of shippers in Mason City, and that he had met him, but that he did not recollect that he had ever transacted business with him, and that he did not recognize the other man at all, and thought he had never

met or transacted any business with him.    Defendant called
these men as witnesses, and proposed to prove by the one that
he had never been in Milwaukee with cattle, and had never
met the witness, and by the other that had been there, and
had transacted business with him in his office; but, on the
objection of the state, the evidence was excluded.    The evi-
dence was offered for the purpose of impairing the credit of
the witness.    It was properly excluded, under the rule that
a witness may not be impeached or discredited as to matters
that are not relevant to the issue.    1 Greenl. Ev., § 462;
*Nelson v. Chicago, R. I. & P. R'y Co.*, 38 Iowa, 564;
*Clark v. Reiniger*, 66 Id., 507.    We have examined the
whole record with care, and we find no ground for disturbing
the judgment of the district court.

AFFIRMED.