Robert **WALLACE**, Petitioner-Appellee Cross-Appellant,

v.

Joseph H. **HAVENER**, Supt., Respondent-Appellant, Cross-Appellee.

Nos. 76–1028, 76–1047.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 15, 1976.

Decided April 14, 1977.

---

Robert Wallace, pro se.

G. Robert Hines, Cincinnati, Ohio (Court-appointed CJA), for appellant.

William J. Brown, Atty. Gen. of Ohio, Robert D. Doane, Simon B. Karas, Columbus, Ohio, for appellee.

Before PECK and ENGEL, Circuit Judges, and MILLER, Judge, United States Court of Customs and Patent Appeals.*

JOHN W. PECK, Circuit Judge, delivered the opinion of the Court, in which ENGEL,

* The Honorable Jack R. Miller, sitting by designation.

Circuit Judge, joined. MILLER, Judge, (pp. 725–729) filed a separate opinion dissenting in part.

JOHN W. PECK, Circuit Judge.

Petitioner Wallace was indicted by an Ohio grand jury for his alleged participation in an armed robbery of a Kroger's store in Cleveland, Ohio, on one count of armed robbery, three counts of shooting with intent to kill, and one count of illegally possessing a firearm. At the first trial, the jury announced agreement (but the record does not disclose whether on guilty or not guilty) as to the counts of shooting with intent to kill and the count of illegally possessing a firearm (Counts 2 through 5), but it could not reach a verdict on the count of armed robbery (Count 1). The Ohio trial court judge declared mistrial. The trial judge also denied a request by defense counsel that the jury be instructed to sign the four verdicts they had reached. Petitioner was retried and was found guilty on all counts of the indictment.

After exhausting his state remedies, petitioner sought federal habeas corpus relief in the district court. One of the three grounds alleged was that petitioner's retrial on Counts 2 through 5 violated the Double Jeopardy Clause of the Fifth Amendment, made applicable to the states by *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The district court held the double jeopardy claim to be meritorious and granted the writ. The district court vacated the judgment on Counts 2 through 5 but determined that the retrial and conviction on Count 1 did not place the petitioner in double jeopardy because the first jury had not been able to agree as to that count. The district court held that the other two claims of petitioner were without merit.

We hold that the district court was correct in determining that petitioner was placed in double jeopardy by retrial on Counts 2 through 5, and affirm, the order of the district court, except for that portion which remanded the petitioner's case to the state court for resentencing on Count 1.

The principal issue, presented under respondent's cross-appeal, is whether the Ohio trial court judge in the first trial was guilty of an abuse of discretion amounting in present context to a constitutional deprivation in not accepting the jury verdicts on Counts 2 through 5. The test for determining whether there was such an abuse of discretion in ordering a mistrial, so that a retrial would constitute double jeopardy, was laid down in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824):

> We think that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.

*Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), and *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), have reaffirmed the "manifest necessity" test.

■ In the present case, taking all the circumstances into consideration, we are directed to no problem at the first trial which would warrant a determination of manifest necessity to justify the discharge of the jury and the refusal to accept the verdicts that the jury had reached on Counts 2 through 5. Thus, the Ohio trial court judge abused his discretion by not accepting those jury verdicts, and the retrial of the petitioner on Counts 2 through 5 placed him in double jeopardy.

■ Respondent argues that the manifest necessity to discharge the jury at the first trial because double jeopardy problems would arise on retrial stemmed from the possibility that, had the jury in the first trial acquitted petitioner on Counts 2 through 5, the state could have been collaterally estopped on certain ultimate facts in a retrial of petitioner on Count 1 and could thereby have been effectively prevented from securing a conviction. We reject that contention, which suggests a fact pattern *de hors* the record. The incorporation of the rule of collateral estoppel in criminal

**724**

cases into the Fifth Amendment's guarantee against double jeopardy, made applicable to the states by the Fourteenth Amendment, *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), should not operate to provide the manifest necessity to discharge a jury without double jeopardy attaching in a retrial. Collateral estoppel may operate effectively to prevent a retrial, but such a bar would serve the ends of public justice and not result in the kind of manifest necessity and public injustice contemplated by *United States v. Perez, supra,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 and *United States v. Jorn, supra,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543.

There is no acceptable reason why the state should have a second opportunity to convince a jury of facts necessary to secure a conviction of a crime. Indeed, one of the purposes of the Double Jeopardy Clause is to prevent the state from having such a second chance. *Ashe v. Swenson, supra,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469. When the jury hands down a partial verdict, a final judgment is rendered on the counts upon which the jury has reached agreement. According to *Ashe v. Swenson, supra,* 397 U.S. at 443, 90 S.Ct. at 1194, ". . . when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Of course, an entry of a disputed verdict on the armed robbery count and a verdict of guilty on the other counts would not have prevented the retrial of the petitioner on the armed robbery charge. *Selvester v. United States,* 170 U.S. 262, 18 S.Ct. 580, 42 L.Ed. 1029 (1898). Therefore, whether the jury was about to acquit or to convict petitioner on Counts 2 through 5 at the first trial, the Ohio trial

court judge should have accepted the partial verdict.[1]

The other two issues in this case arise under petitioner's appeal, and are whether in-court identifications of petitioner were so tainted and certain prosecutorial comments were so improper as to deny petitioner due process. Petitioner's claims on these issues are without merit.

■ In the second trial, petitioner's mother and wife testified that, when visiting petitioner at jail, they observed two of the four eyewitnesses at the robbery (cashiers at the Kroger's store) being shown photographs of the petitioner by a police detective, who simultaneously advised the eyewitnesses that petitioner was guilty. The cashiers, however, denied ever having seen a photograph of petitioner, and on cross-examination petitioner's mother was not certain that the detective was showing a photograph of her son to the cashiers. The fact remains, however, that the in-court identifications of petitioner by at least two eyewitnesses to the robbery were untainted. As to the possibility of taint attaching to the testimony of the other two witnesses, see *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

■ Also in the second trial, the prosecutor told the jury in his closing argument to acquit the petitioner if he were innocent but to consider the position of an eyewitness and a policeman at the robbery, who were witnesses for the prosecution and who testified that petitioner was involved in the armed robbery of the Kroger's store. The prosecutor's comments did not render the trial fundamentally unfair.

■ That portion of the order of the district court which purported to remand

---

1. Petitioner does not argue, and we do not hold, that petitioner was placed in double jeopardy by his retrial on Count 1. An entry of a disputed verdict was made. Moreover, even if the jury had acquitted petitioner on the other counts, no basis is provided on this record for concluding that there could have been issues of ultimate fact that the state would have been estopped to dispute in a second trial which would have effectively prevented a retrial on

Count 1. According to the petitioner, the only issue in common between Count 1 and Counts 2 through 5 that would have qualified as an issue of ultimate fact was petitioner's presence at the scene of the crime. Had the jury concluded that the state had not established petitioner's presence at the scene of the crime, there would have been no occasion for the jury to proceed further in the deliberations on the count of armed robbery.

the case to the state court goes beyond the power of the district court and is therefore vacated. The judgment is otherwise affirmed.

MILLER, Judge, dissenting in part.

I cannot agree with the majority on the double jeopardy issue with respect to counts 2–5.

The court below held that the second trial on counts 2–5 violated petitioner's right not to be placed twice in jeopardy. It premised this holding on its determination that—

(a) the Ohio trial court judge abused his discretion in declaring a mistrial on all counts[1] (rather than on only count 1), because there was "no manifest necessity" for doing so; and

(b) there was "no manifest necessity" for doing so "Since the trial judge could have accepted the four verdicts . . . and was in fact requested to do so by the defendant."

The record of the first trial that was before the court below and is now before this court does not contain the pleadings, evidence, argument of counsel, or charge to the jury, and consists only of those pages relating to proceedings after the case went to the jury.[2] The court below merely directed that respondent-appellant submit "[a] copy of a *portion* of the transcript of petitioner's first trial in which the jury announced its inability to return a verdict on all counts, and the court subsequently declared a mistrial." (Emphasis added.) Obviously the Ohio trial court judge, who had all the circumstances before him, *could have* accepted the partial verdict, allowing the jury to enter its disagreement on count 1 and its verdicts on counts 2–5 (the jury had not indicated whether its agreement on counts 2–5 was for conviction or acquittal). However, without all the circumstances before them, the court below and the majority here have determined that the Ohio trial court judge "abused his discretion" by failing to accept the partial verdict, because there was "no manifest necessity" for not doing so; that there was "no manifest necessity" for not doing so, because he *could have* done so. What this really means is that the Ohio trial court judge had *no* discretion to refuse to accept such a partial verdict. The "manifest necessity" test does not go so far, and the cases cited by the majority[3] do not support such a position.

1. The Court of Appeals of Ohio, Eighth District, had affirmed the trial judge's action, saying with respect to Wallace's double jeopardy argument:

   The trial court denied the defendant's request to receive a partial verdict on some of the counts. This is discretionary with the court and did not result in any prejudice to the defendant. See *Jackson v. State of Ohio* (1883), 39 Ohio St. 37.

   Wallace's motion for delayed appeal to the Ohio Supreme Court was denied.

2. From those pages it appears that the jury began its deliberations at 9:15 A.M., recessed for lunch, and resumed at 1:45 P.M. Later on it reported that it could arrive at a partial verdict but could not arrive at a verdict on all the counts and that the members felt that they could not unanimously arrive at an agreement on all five counts. At the request of Wallace's counsel and without objection from the State, the trial judge returned the jury for further deliberations, after stating: "If, however, there is any reasonable possibility of reaching a verdict, you should continue your deliberations." Still later the jury reported that it was in agreement on counts 2–5, but not in agreement on count 1. Thereupon the judge discharged the jury, noting for the record that Wallace's counsel had requested that the jury be directed to declare and sign the four verdicts on counts 2–5 and that the request was denied. As the basis for his denial, he cited *Jackson v. State,* supra note 1 and 15A (sic 15, 1955 ed.) *Ohio Jurisprudence* § 643. Headnote 4 of *Jackson* reads:

   While the court *may*, it is not bound to receive a verdict which finds the defendant guilty on one count, without any finding as to the other counts, and, as a general rule, where such verdict is tendered, the court should require the jury to deliberate further, so as to be able to respond to each count.

   The cited section 643 merely states that where a case is submitted to a jury on more than one count, proper practice would require that the verdict respond to the issues made on each of such counts; and *Jackson* is cited for the statement in the above-quoted headnote.

3. *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Selvester v. United States,* 170 U.S. 262, 18 S.Ct. 580, 42 L.Ed. 1029 (1898); *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).

*Cited Cases do not Support
Majority's Position*

A careful analysis of the cited cases discloses that the "manifest necessity" test is a guideline for trial judges, to be considered along with "the ends of public justice" in the exercise of their discretion to declare a mistrial rather than a *rigid, mechanical formula* by which the exercise of that discretion is to be reviewed. Thus, in *Illinois v. Somerville,*[4] *supra* at 461, 93 S.Ct. at 1069, 35 L.Ed.2d at 429, the majority opinion quoted fully from *United States v. Perez, supra,* saying (emphasis supplied):

Mr. Justice Story, writing for a unanimous Court, set forth the standards for determining whether a retrial, following a declaration of a mistrial over a defendant's objection, constitutes double jeopardy within the meaning of the Fifth Amendment. In holding that the failure of the jury to agree on a verdict of either acquittal or conviction did not bar retrial of the defendant, Mr. Justice Story wrote:

"We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, *taking all the circumstances into consideration,* there is a *manifest necessity* for the act, *or the ends of public justice* would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office."[5]

The Court then said (*id.* at 462, 93 S.Ct. at 1069, 35 L.Ed.2d at 429–30):

This formulation, consistently adhered to by this Court in subsequent decisions, abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial. The broad discretion reserved to the trial judge in such circumstances has been consistently reiterated in decisions of this Court. In *Wade v. Hunter,* 336 U.S. 684 [69 S.Ct. 834, 93 L.Ed. 974] (1949), the Court, in reaffirming this flexible standard, wrote:

"We are asked to adopt the *Cornero* [*v. United States,* 9 Cir., 48 F.2d 69,] rule under which petitioner contends the absence of witnesses can never justify discontinuance of a trial. Such a rigid formula is inconsistent with the guiding principles of the *Perez* decision to which we adhere. Those principles command courts in considering whether a trial should be terminated without judgment to take 'all circumstances into account' and thereby forbid the mechanical application of an abstract formula. The value of the *Perez* principles thus lies in their capacity for informed application under widely different circumstances without injury to

4. Somerville was brought to trial under an indictment which, it developed before any evidence was presented, was defective, could not be cured by amendment, and could be raised to overturn any judgment of conviction. Over Somerville's objection the trial judge declared a mistrial, following which he was reindicted, tried, and convicted. The Seventh Circuit Court of Appeals held that Somerville's petition for habeas corpus on the ground of double jeopardy should have been granted. The Supreme Court reversed.

5. Perez was tried for a capital offense. The jury, being unable to agree, was discharged without the consent of either party; whereupon Perez claimed that he was entitled to be freed from custody without another trial. The Supreme Court held that the discharge of the jury constituted no bar to a further trial.

defendants or to the public interest." *Id.,* at 691 [69 S.Ct. at 838].

With respect to *United States v. Jorn,*[6] *supra,* the following portion of the majority opinion in *Illinois v. Somerville, supra* at 469–70, 93 S.Ct. at 1073, 35 L.Ed.2d 435, indicates that what the Court did not hold in *Jorn* was more important than what it held on the particular facts of that case:

> Given the established standard of discretion set forth in *Perez, Gori,* and *Hunter,* we cannot say that the declaration of a mistrial [in *Illinois v. Somerville*] was not required by "manifest necessity" or the "ends of public justice."

Our decision in *Jorn,* relied upon by the court below and respondent, does not support the opposite conclusion. While it is possible to excise various portions of the plurality opinion to support the result reached below [see note 4, *supra*], divorcing the language from the facts of the case serves only to distort its holdings. That opinion [*Jorn*] dealt with action by a trial judge that can fairly be described as erratic. The Court held that the lack of apparent harm to the defendant from the declaration of a mistrial did not itself justify the mistrial, and concluded that there was no "manifest necessity" for the mistrial, as opposed to less drastic alternatives. The Court emphasized that the absence of any manifest need for the mistrial had deprived the defendant of his right to proceed before the first jury, but it did not hold that that right may never be forced to yield, as in this case, to "the public's interest in fair trials designed to end in just judgments." The Court's opinion in *Jorn* is replete with approving references to *Wade v. Hunter, supra* . . . ..

**6.** At Jorn's trial, the judge did not believe the statement of a witness that he had been warned of his rights by an Internal Revenue agent and refused to allow him to testify until after he had consulted a lawyer. After learning from the Government that the remaining four witnesses were "similarly situated," and after surmising that they, too, had not been properly informed of their rights, the judge declared a

### Majority's Position Contrary to Supreme Court

Not only is the majority's position unsupported by the cases it cites, but it is contrary to the "manifest necessity" test on which it relies. As set forth in *United States v. Perez, supra,* repeated in *Wade v. Hunter, supra,* and quoted in *Illinois v. Somerville, supra, all* circumstances of the trial must be taken into account. That was not done by the court below, which, as pointed out above, ordered a grossly incomplete record for review. That has not been done by the majority, which relies on the same incomplete record.

The majority's position is contrary to the Supreme Court's admonition in *Illinois v. Somerville, supra* at 462, 93 S.Ct. at 1069, 35 L.Ed.2d at 429, against—

> the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial.

and in *Wade v. Hunter, supra* at 691, 69 S.Ct. at 838, 93 L.Ed. at 979 against—

> the mechanical application of an abstract formula.

The majority's statement that—

> There is no acceptable reason why the state should have a second opportunity to convince a jury of facts necessary to secure a conviction of a crime.[7]

is contrary to the clear position of the Supreme Court set forth in *Wade v. Hunter, supra* at 689, 69 S.Ct. at 837, 93 L.Ed. at 978, and in *Gori v. United States,* 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901, 904 (1961). In *Wade v. Hunter,* a majority of the Court declared:

> There may be unforeseeable circumstances that arise during a trial making its

mistrial to give the witnesses an opportunity to consult with lawyers. Jorn's plea in bar of double jeopardy to an attempted second trial was upheld.

**7.** In support of this statement, the majority cites *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), discussed *infra.*

728

completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again. In *Gori v. United States,* a majority of the Court said:

Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment. . . . It is also clear that "This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served . . .," *Brock v. North Carolina,* 344 U.S. 424, 427 [73 S.Ct. 349, 350, 97 L.Ed. 456, 459], and that we have consistently declined to scrutinize with sharp surveillance the exercise of that discretion. [Footnote omitted.]

*Accord, United States v. Goldstein,* 479 F.2d 1061 (CA 2), *cert. denied,* 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973).

### Erroneous Application of "Manifest Necessity" Test

The majority says:

taking all the circumstances into consideration, we are directed to no problem at the first trial which would warrant a determination of manifest necessity to justify the discharge of the jury and the refusal to accept the verdicts that the jury had reached on Counts 2 through 5. Thus, the Ohio trial court judge abused his discretion . . ..

The fatal defect in this statement is that, unlike the situation before the Ohio trial court judge, "all the circumstances" have not been taken into consideration here because of the absence from the record of the pleadings, evidence, argument of counsel, and charge to the jury. Moreover, in reviewing the decision of the court below that the Ohio trial court judge abused his discretion, the proper question is whether the record supports its holding that there was "no manifest necessity" for declaring a mistrial—not whether the record shows that there was "manifest necessity" for such action. Even assuming the proper question to be whether the record shows that there was "manifest necessity," it is patently unfair for the lower court to have ordered an incomplete record and, on appeal, to sanction that error by saying that such a record does not warrant a determination of "manifest necessity." The record before the court below and this court is such that the only "circumstances" available for consideration are (1) that the jury was in agreement on counts 2–5 (whether for conviction or acquittal not known) and hopelessly in disagreement on count 1, and (2) that the Ohio trial court judge *could have* accepted the jury's verdict. To hold that this is sufficient to show that there was "no manifest necessity" for declaring a mistrial amounts to holding that the Ohio trial court judge, who had all the circumstances before him, had no discretion in the matter. It is an erroneous application of the "manifest necessity" test.

In citing *Ashe v. Swenson, supra,* which reaffirmed that the doctrine of collateral estoppel is a requirement of due process and held that it is a part of the Fifth Amendment's guaranty against double jeopardy,[8] respondent-appellant argues that, had the Ohio trial court judge accepted the jury's verdicts on counts 2–5 and had the verdicts been for acquittal, the State would have been precluded by collateral estoppel from relitigating ultimate facts previously determined during a retrial on count 1. The

---

**8.** Since we are dealing here with a "rule of federal law" under *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), it is necessary to consider such state cases as *Hurley v. State,* 6 Ohio 399 (1834), *Dobbins v. State,* 14 Ohio St. 493 (1863), and *Mitchell v. State,* 42 Ohio St. 383 (1884), cited by respondent-appellant and *Lesslie v. State,* 18 Ohio St. 390 (1868), cited by Wallace.

majority says that this argument suggests a fact pattern *dehors* the record.[9] Whether it is *dehors* the *complete* record, we do not know, because the complete record is not before this court. The relevance of respondent-appellant's collateral estoppel point is that it is one, *but only one,* of the circumstances that the Ohio trial court judge could have considered in declaring a mistrial.[10] The majority's reliance on *Selvester v. United States, supra,* for the contrary is misplaced. *Selvester* was decided in 1898—before application of the doctrine of collateral estoppel to criminal cases was contemplated. *Ashe v. Swenson, supra* at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475, citing *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916).

The conclusion to be drawn from the foregoing is that a reviewing court should follow the Supreme Court's admonition against application of a rigid, mechanical formula, such as "no manifest necessity," and against "sharp surveillance" of the exercise of a trial judge's discretion to declare a mistrial. Even more so should that admonition be followed when, as here, the reviewing court does not have before it a complete record showing all of the circumstances that were before the trial judge.

The order of the district court that the judgment of conviction on counts 2–5 be vacated should be overruled.

---

9. In its footnote 1, the majority overlooks that respondent-appellant argues that another issue in common among the counts could have been over the ultimate fact of possession of a firearm and speculates that if the only common issue had been presence of Wallace at the scene of the crime and if the jury had found in his favor on this issue, the jury would have also been in agreement on count 1. Of course, such speculation can hardly serve as a proper basis for a determination of "no manifest necessity." A complete record of the original trial is needed to avoid speculation. The Ohio trial court judge's instructions to the jury, for example, could have precluded speculation on the collat-

eral estoppel point. *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 239–40, 92 L.Ed. 180, 184 (1948). *See* Comment, *Ashe v. Swenson: Collateral Estoppel, Double Jeopardy, and Inconsistent Verdicts,* 71 Colum.L.Rev. 321 (1971).

10. The majority's broad statement that the rule of collateral estoppel "should not operate to provide the manifest necessity to discharge a jury without double jeopardy attaching in a retrial" is clearly contrary to the position of the Supreme Court set forth in *Gori v. United States* and *Wade v. Hunter,* both *supra.*