**Kenneth Dwayne DANIELS, Petitioner,**

v.

**Sherry BURT, Warden, Ryan Regional Correctional Facility, Respondent.**

Civ. No. 94–71893.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 11, 1995.

See also 192 Mich.App. 658, 482 N.W.2d 176.

COHN, District Judge.

## I.

This is a habeas corpus case. 28 U.S.C. § 2254. Petitioner, Kenneth Daniels (Daniels), challenges his State of Michigan conviction for second degree murder and felony firearm use. The matter was referred to a magistrate judge, who filed a report and recommendation (MJRR) recommending that the petition for writ of habeas corpus be denied. Now before the Court are Daniels's objections to the MJRR. Respondent, Sherry Burt (Burt), Warden of Ryan Regional Correctional Facility, did not file a response to the objections. For the reasons that follow, the petition will be denied.

## II.

The background to this case is set out in the MJRR, and need not be repeated at length here.

### A.

Briefly, Daniels was tried in Detroit Recorders Court in May, 1988 for the 1987 killing of David Reese. Daniels was charged with first degree murder and felony firearm use. The jury was instructed on these charges, as well as the lesser-included offenses of second degree murder, voluntary manslaughter, and involuntary manslaughter.[1] After a four day trial, the jury began deliberating on June 1, 1988. The form of verdict was described by the trial judge as follows:

> There are two counts listed here[.] Count I, you have ... five different choices. You must check one of the boxes under Coun[t] I. First box is not guilty; second is guilty of murder in the first degree; third is guilty of murder in the second degree; fourth is guilty of voluntary manslaughter; fifth is guilty of involuntary manslaughter.
>
> You must check one of those boxes.
>
> Then under Count II you must check one of these boxes: First, not guilty; second[,] guilty of possession of a firearm in the commission of a felony.

Anne Yantus, State Appellate Defender, Detroit, MI, for petitioner.

K. Hunter, Asst. Atty. Gen., Lansing, MI, for respondent.

1. The jury was also instructed on self defense and defense of another.

The jury was not given any instructions on how to structure its deliberations in light of the verdict form. On June 6, 1988, the jury sent a note which read:

Once again, Your Honor, we need to hear the law. Because we are "dead locked" 11 to 1, we really need to hear this for the benefit of one juror.

The trial court instructed the jury that it should not indicate how it is split in the future, reread the instructions, and sent them back to continue deliberating. Again, no guidance was offered as to how the jury should conduct its deliberations. Later in the afternoon of June 6 the jury sent another note, stating "We, the Jury, are not able to reach a unanimous verdict." The judge again instructed the jury to continue deliberating, advising them to:

give impartial consideration to one another's views and talk over differences of opinion in a spirit of fairness and frankness . . . However, none of you should surrender your opinion of weight and effect of the evidence or the lack of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning with a verdict.

After the jury resumed deliberations, Daniels's counsel requested that the jury be polled as to the lesser-included offenses and that a partial verdict be taken, arguing that if the jury had reached an impasse as to a lesser-included offense, they had in effect acquitted Daniels of the greater charges.[2] The judge denied the request and when the jury had not reached a verdict by the end of the day, he declared a mistrial and discharged the jury.[3]

### B.

Daniels was tried again beginning in late November, 1988. The jury found him guilty of second degree murder and felony firearm use. Daniels appealed to the Michigan Court of Appeals, and his sentence was affirmed in December, 1991. *People v. Daniels*, 192 Mich.App. 658, 482 N.W.2d 176 (1991). The Michigan Supreme Court denied leave to appeal. *People v. Daniels*, 440 Mich. 882, 487 N.W.2d 464 (1992).

### C.

Daniels then filed a petition for habeas corpus relief, raising the following six claims:

I. Defendant was denied his federal double jeopardy right to be protected against multiple prosecutions when there was no manifest necessity to declare a mistrial once the first trial judge refused, upon request, to inquire of the jury for partial verdicts when the jury had indicated that they were deadlocked 11 to 1 and the jury was presented with several lesser included offenses.

II. Defendant's conviction must be reversed where the trial court erred in denying the motion for directed verdict as to first-degree murder.

III. The trial court erred in refusing, upon request, to voir dire the jury on racial prejudice when both the defendant and victim were black and the killing involved a heated dispute resulting in multiple stabbings.

IV. The trial court erred in allowing introduction of the hearsay statement that defendant was "tired of" the deceased and intended to kill him.

V. The court's comments and instructions denied defendant his federal due process right to a fair trial.

2. Specifically, Daniels's counsel requested that the Court inquire of the jury as to each offense listed on the verdict form:

That is, as to the charge of murder in the first degree, have you reached a verdict? If so, what is the verdict?

As to the charge of [s]econd degree murder, have you reached a verdict? If so, what is that verdict?

\* \* \* \* \* \*

. . . Just exactly along the same lines.

3. The trial judge asked the foreperson:

[I]s it still the case that you believe that you cannot reach a unanimous verdict?

The foreperson responded: "Yes, it is, your Honor," to which the judge responded:

All right. I am going to excuse this jury. I believe you are deadlocked. I am going to excuse you.

VI. The trial court erred in allowing the bloodied jacket of the deceased to be introduced into evidence when the jacked had little probative value and had a high likelihood of inflaming the passions and prejudices of the jury.

The magistrate judge recommended denying the petition. Daniels now objects to the magistrate judge's recommendations as to all six issues.

## III.

### A.

 The Fifth Amendment's double jeopardy clause prohibits a retrial on charges for which a defendant has been acquitted. *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). Retrial after a mistrial does not offend the double jeopardy clause if the mistrial was the result of "manifest necessity." *United States v. Perez,* 22 U.S. 579, 580, 6 L.Ed. 165 (1824). The determination of "manifest necessity" is committed to the sound discretion of the trial court. *Arizona v. Washington,* 434 U.S. 497, 509–510, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978). If the trial court fails to consider obvious and adequate alternatives to aborting a trial, it may not have exercised sound discretion in declaring a mistrial. *Glover v. McMackin,* 950 F.2d 1236, 1242 (6th Cir.1991). In the general case, "failure of the jury to agree on a verdict [is] an instance of 'manifest necessity.'" *Richardson v. United States,* 468 U.S. 317, 324, 104 S.Ct. 3081, 3085, 82 L.Ed.2d 242 (1984).

 Daniels characterizes the argument as to double jeopardy as follows:

The question presented to this Court is not whether declaring a mistrial is appropriate when a jury is deadlocked, but whether denial of a request to inquire of the jury for partial verdicts before such declaration, and in a situation where the possibility of partial verdicts has not been pursued, where the jury has been instructed on several lesser included offenses and the jury indicated that they are split 11 to

1, precludes a finding of manifest necessity. This Court should answer in the affirmative.

As the MJRR points out, a minority of courts have held that a judge should inquire whether a deadlocked jury has reached a partial verdict as to any included offenses before declaring a mistrial. *See State v. Castrillo,* 90 N.M. 608, 566 P.2d 1146 (1977); *Stone v. Superior Court of San Diego County,* 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809 (1982); *State v. Pugliese,* 120 N.H. 728, 422 A.2d 1319 (1980); *Whiteaker v. Alaska,* 808 P.2d 270 (1991). However, Michigan is with the majority who have rejected such a rule. In specifically declining to follow the approach set forth in *Castrillo,* the Michigan Court of Appeals said:

[w]e conclude that polling the jury on the various possible verdicts submitted to it would constitute an unwarranted and unwise intrusion into the province of the jury.... [I]t must be recognized as a practical matter that jury votes on included offenses may be the result of a temporary compromise in an effort to reach unanimity. A jury should not be precluded from reconsidering a previous vote on any issue, and the weight of final adjudication should not be given to any jury action that is not returned in a final verdict.

Consequently we reaffirm the principle that the double jeopardy guarantee does not bar retrial where the trial court declares a mistrial after it has reasonably concluded that the jury is unable to agree on a verdict. *People v. Hall,* 396 Mich. 650, 655 [242 N.W.2d 377] (1976). The protection against double jeopardy does not require a trial court to inquire as to the status of jury deliberations on the included offenses before it declares a mistrial due to a hung jury.

*People v. Hickey,* 103 Mich.App. 350, 353, 303 N.W.2d 19 (1981).[4] As the magistrate judge noted, the situation involved in *Hickey* and here is distinct from that involved in cases like *Wallace v. Havener,* 552 F.2d 721 (6th Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 433,

---

4. While the Court of Appeals is not the final arbiter of Michigan law, its decision is authoritative in the absence of a Supreme Court decision

on point. Nothing suggests the Michigan Supreme Court would take a less restrictive view of a criminal defendants' double jeopardy rights.

54 L.Ed.2d 300 (1977), a case in which the jury announced it had agreed on some counts but not others, and the judge declared a mistrial without first taking the jury's verdict on the counts to which it had agreed.[5]

Daniels incorrectly characterizes the MJRR as ignoring "the facts of the matter" in determining whether the trial judge soundly exercised his discretion in finding manifest necessity to declare a mistrial. The fact of the matter is that the jury announced it was deadlocked.[6] The jury did not announce that it had reached a verdict as to any charged offense. Daniels's counsel requested that the jury be polled as to the lesser included offenses on which it was instructed, and the trial judge declined the request.

■ Under the circumstances here, the trial judge's declaring a mistrial was not an abuse of his discretion amounting to constitutional error. The jury simply did not indicate it had reached agreement on any of the offenses on which it was instructed. Had the jury indicated or even suggested that it had reached a verdict as to some of the offenses, the trial judge would have constitutionally erred in declaring a mistrial without accepting the jury's partial verdict. *Wallace, supra.* Here the jury said nothing, and as the record stands the trial judge had no reason to believe that the jury had reached a partial verdict.

■ No federal appellate or Michigan court has held that the double jeopardy clause imposes a constitutional requirement that the jury be polled as to included offenses in order to determine whether there exists manifest necessity to declare a mistrial when the jury has indicated it is deadlocked, and has not indicated that it has reached a partial verdict. While the Court is of the view that the better practice in such circumstances is to inform the jury that it has the option of returning a partial verdict and to poll it as to all the charged offenses, it re-mains true that, as Daniels recognizes, a truly deadlocked jury represents an instance of manifest necessity requiring the declaration of a mistrial. *Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978). A requirement that the trial judge poll the jury in circumstances like those involved here is a sound rule of practice, but is not a constitutional requirement. The Court is constrained not to agree with Daniels that the circumstances here presented a suggestion of a partial verdict which triggered a constitutional duty of the trial judge to poll the jury as to lesser included offenses. Because it was within the trial judge's discretion under the circumstances present to find manifest necessity for the declaration of a mistrial, there was no double jeopardy violation here.

■ While the Court can not find that the trial judge committed constitutional error in declaring a mistrial, the jury clearly was not well handled by the trial court. As noted above, the trial court should have informed the jury of its option to return a partial verdict and polled the jury as to all charged offenses. *See United States v. DiLapi,* 651 F.2d 140, 146–47 (2d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982) (discussing federal policy on the issue). Further, the jury was given no assistance as to how it should structure its deliberations in light of the verdict form. The better practice is to provide the jury with specific guidance as to how it should deal with multiple charged offenses. *See* Christopher N. May, *"What Do We Do Now?": Helping Juries Apply the Instructions,* 28 Loy.L.A.L.Rev 869, 884–85 (1995) (suggesting the use of a special instruction as to how the jury might use the instructions in its deliberations). *See also,* ABA/Brookings Symposium, *Charting a Future for the Civil Jury System* 14 (1992) (suggesting ways to "[i]mprove jurors' comprehension of the issues and facts at trial.").

---

**5.** In *Wallace,* the Court of Appeals for the Sixth Circuit found no manifest necessity for a second trial because the trial judge in the first trial had abused his discretion by refusing to accept the jury's verdict as to the counts on which it announced it had agreed.

**6.** The jury's announcement in its first note that it was split 11 to 1 is not properly considered here, and is not evidence that it had reached a verdict as to any specific offense.

## B.

Daniels also objects in summary form to the magistrate judge's recommendations as to Issues II through VI. The objections are simply encapsulated versions of the arguments Daniels made without success to the magistrate judge. Daniels has not pointed out any specific errors in the magistrate judge's treatment of the issues, and has added nothing new to his arguments. The magistrate judge's treatment of Issues II through VI is carefully considered and persuasive. The Court accepts the magistrate judge's recommendations as to Counts II through VI for the reasons set forth in the MJRR.

## IV.

For the reasons stated above, Daniels's petition for writ of habeas corpus is DENIED.

SO ORDERED.