[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12310
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cr-00237-LSC-HGD-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER LEE TUTTLE,
a.k.a. Red,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 30, 2015)

Before TJOFLAT, WILSON and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Christopher Tuttle ("Defendant") was originally tried on drug-related charges, but because the jury failed to reach a verdict after five days of deliberation, the district court declared a mistrial. Seeking to bar a second trial on these charges and arguing that there had been no manifest necessity for a mistrial, Defendant filed a motion to dismiss the indictment, raising a double jeopardy argument. The district court denied Defendant's motion, and the latter now appeals that ruling. For the reasons set out below, we AFFIRM.

## I. BACKGROUND

In August 2012, Defendant and others were charged in a multi-count superseding indictment for drug offenses. The indictment charged Defendant with one count of conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana (Count 1), in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A), and seven counts of using a telephone to facilitate the commission of a drug-trafficking crime (Counts 11–17), in violation of 21 U.S.C. § 843(b). Defendant pled not guilty and the case went to trial. The Government's case took two days to present. Defendant did not present a case.

Although the indictment charged Defendant with conspiring to possess 1000 or more kilograms of marijuana, the court explained in its charge to the jury that the jury could find Defendant guilty of that conspiracy even if it did not find that he conspired to possess at least 1000 kilograms of marijuana. Further, the court

2

advised jurors that, if they did find Defendant guilty of the conspiracy count, they would also have to unanimously agree as to the quantity[1] that he conspired to possess. The above instruction was no surprise to Defendant or his counsel because the court and parties had discussed, at the preceding charge conference, the appropriate instructions to give the jury. Defendant never objected to this instruction.

The requirement for a unanimous verdict on the quantity of drugs attributable to a defendant who has gone to trial arises out of somewhat recent Supreme Court precedent. Specifically, the Supreme Court has held that when a prosecutor seeks a statutory mandatory-minimum sentence or a higher statutory maximum sentence based on the existence of a threshold quantity of drugs that triggers these sentencing enhancements, the enhancement can be imposed only if the jury unanimously agrees that the defendant is responsible for the applicable drug amount. *See Alleyne v. United States*, 570 U.S. __, 133 S. Ct. 2151, 2155 (2013) (holding that any fact, other than a prior conviction, that increases the statutory minimum penalty must be submitted to the jury and proved beyond a reasonable doubt) and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that any fact, other than a prior conviction, that increases the penalty for a crime

---

[1] In discussing this issue, we use the words "quantity," "amount," and "weight," synonymously.

beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt).

Given the jury's responsibility to now make the finding necessary to impose either a mandatory-minimum sentence or a higher statutory maximum sentence than would be available were the defendant not responsible for the threshold amount of drugs, courts typically provide a special verdict form to permit the jury to indicate the quantity of drugs it has found the defendant conspired to possess. And a special verdict form was given to the jury in this case.

Based on the special verdict form to which they agreed, the parties apparently envisioned three possible sentencing outcomes, depending on the jury's determination of the applicable quantity.[2]  First, if the jury unanimously found that

_____

[2]  With respect to the conspiracy charge, the verdict form read as follows:

> 1.  We, the Jury, find the Defendant Christopher Lee Tuttle _____ as charged in **Count One** of the Superseding Indictment.
>
> [**Note:**  If you find the Defendant not guilty as charged in Count One, **STOP!** Do not consider paragraphs 2–9 below.]
>
> 2. We, the Jury, having found the Defendant guilty of the offense charged in Count One, further  find with respect to the Count that he conspired to possess with intent to distribute and to distribute the following controlled substance in the amount shown (place an X in the appropriate box):
> (a)  Marijuana:
>
> | | | |
> |---|---|---|
> | (i) | Weighing 1000 kilograms or more | ☐ |
> | (ii) | Weighing 100 kilograms or more, but less than 1000 kilograms | ☐ |

4

the weight of the marijuana that Defendant conspired to possess was equal to or greater than 1000 kilograms, Defendant was subject to a 10-year mandatory-minimum sentence and a statutory maximum sentence of life in prison.  21 U.S.C. § 841(b)(1)(A)(vii).  If it found that Defendant was responsible for a quantity involving 100 or more kilograms, but less than 1000 kilograms, Defendant was subject to a 5-year mandatory-minimum sentence and a maximum sentence of 40 years in prison.  § 841(b)(1)(B)(vii).  Finally, if the jury found that the quantity of marijuana attributable to Defendant was less than 100 kilograms, then he would be subject to no mandatory-minimum.  But, in that event, it is unclear what statutory maximum the parties envisioned being applicable because § 841 provides for a maximum sentence of 20 years if the quantity of marijuana is between 50–100 kilograms, but only a 5-year maximum sentence if the quantity is less than 50 kilograms, unless there are 50 or more marijuana plants involved.  *See* §§ 841(b)(1)(C) and (D).  As the third option asked the jury whether it concluded that Defendant had conspired to distribute less than 100 kilograms, it would appear that the parties envisioned a statutory maximum of 20 years.  At any rate, because the jury was unable to reach a unanimous verdict on any quantity, this ambiguity does not affect the question before us on this appeal.

---

  (iii)    Weighing less than 100 kilograms                              ☐

About five hours into deliberations, the jury reported that it was divided. The court instructed the jury to continue deliberating. On the third day of deliberations, the jury informed the court that it was in agreement on Count 1, the conspiracy count, but was deadlocked on the seven telephone counts (Counts 11–17). With the parties' consent, and pursuant to Federal Rule of Criminal Procedure 31(b)(2),[3] the court informed the jury that it could return a verdict for any count on which there was unanimous agreement.

About an hour and a half later, however, the jury submitted another question, this time asking if it was "allowed to give a partial verdict only on Count #1, and not apply[] a weight to the illegal substance." The note further stated, "This answer will help us to decide on a partial verdict." Logically reasoning that the jury must have found Defendant guilty of conspiracy, but had not yet agreed on the weight to be attributed to him, the district court observed, "It sounds like they have answered question one unanimously but not question two, which is quantity, and want to know if they are required to reach a unanimous verdict on quantity, which they are." The prosecutor agreed that if the jury found Defendant guilty of conspiracy (Question 1), then it had to reach unanimous agreement on the quantity

_____

[3] Federal Rule of Criminal Procedure 31 provides that, in a case involving multiple counts, if the jury cannot agree on all counts, the jury may return a verdict on those counts on which it has agreed. Fed. R. Crim. P. 31(b)(2). The Rule further provides that if the jury cannot agree on a verdict as to one or more counts, the court may declare a mistrial on those counts and the defendant may be retried on any count on which the jury could not agree. Fed. R. Crim. P. 31(b)(3).

6

of marijuana as well (Question 2). The court stated it intended to instruct the jury that it had to agree unanimously on both the question of guilt and the question of quantity in order to return a verdict on Count 1. Defendant did not object, and the court delivered that instruction.

Late on the fourth day, the jury again informed the court it could not agree on the weight of the marijuana, so the court proposed delivering an *Allen*[4] charge. As the parties discussed the substance of an *Allen* charge, the court indicated it would focus on the weight of the drugs because if the jury could not agree on that issue, a mistrial had to be declared. On that subject, the prosecutor altered his previous position, opining the possibility that the quantity of drugs was not an element of the offense under § 841, and so, if the jury did not agree on the amount, the sentencing range would default to the lowest one. Interestingly, and contrary to the position that Defendant is taking on appeal, defense counsel said she disagreed with the prosecutor on that point, but did not elaborate.

Before bringing the jury back in, the court asked the parties to consider overnight whether it should accept a verdict on guilt alone, or whether the parties wanted to move for a mistrial. Defense counsel objected generally to an *Allen* charge but did not object to a specific instruction that the jury must return a

---

[4] *Allen v. United States*, 164 U.S. 492 (1896). An *Allen* charge "instructs a deadlocked jury to undertake further efforts to reach a verdict." *United States v. Chigbo*, 38 F.3d 543, 544 n.1 (11th Cir. 1994).

7

unanimous verdict on both questions:  guilt and weight of the marijuana.  The court

then instructed the jury:  "If you cannot reach a verdict—a unanimous verdict with

regard to Question 2, then you should return to the courtroom, and the Judge will

declare this case mistried and discharge you with sincere appreciation for your

services."  The jury deliberated for another hour and then adjourned for the

evening, again without a verdict.

On day five, the court invited argument from the parties about declaring a

mistrial.  At this point, the jury had been deliberating for three to four hours since

receiving the modified *Allen* charge.  Both parties requested that deliberation be

allowed to continue.  The court, however, decided to declare a mistrial because the

jury (1) was in its fifth day of deliberations following only two days of evidence,

(2) had received a modified *Allen* charge, and (3) had been focusing exclusively on

the quantity issue in Count 1 for two entire days, after having deadlocked earlier on

all the other counts.

Defense counsel inquired whether the court was inclined to accept a partial

verdict on the conspiracy count by receiving the jury's answer to Question 1.  The

court explained that, in that event, the Government would have to stipulate to the

lowest quantity under the statute, which the Government declined to do.  When the

judge repeated that a decision on quantity was necessary to render a complete

verdict on Count 1, once again defense counsel offered no disagreement or objection. The court then declared a mistrial and excused the jury.

Subsequently, Defendant filed a motion to dismiss the indictment, asserting that because there had not been a manifest necessity to declare a mistrial in the first place, a retrial would violate the Double Jeopardy Clause. This motion was based on Defendant's argument that the court had prematurely declared a mistrial and instead should have waited a bit longer to confirm that the jury was unable to reach a verdict. There was no mention in this motion to dismiss of any concern by Defendant that the court had insisted that the jury determine unanimously the quantity to be attributed to Defendant. The court denied the motion to dismiss, and this appeal followed.

Notwithstanding his absolute silence, both at trial and in the motion to dismiss, as to the accuracy of the district court's assumption that the jury needed to reach a unanimous verdict on the quantity question before the court could accept a guilty verdict on the conspiracy count, Defendant has now made that decision his primary argument on appeal. Defendant also repeats the argument made before the district court that the latter erred in declaring a mistrial less than four hours after giving an *Allen* charge. Finally, Defendant argues that the court erred because it based its decision to declare a mistrial on impermissible considerations.

9

## II.  **DISCUSSION**

A.    **District Court's Requirement that the Jury Reach a Unanimous Verdict as to the Quantity of Drugs Defendant Conspired to Distribute**

1.    Standards of Review

Defendant argues that the Double Jeopardy Clause operates to prevent a second trial of him on these charges.  Found in the Fifth Amendment of the Constitution, the Double Jeopardy Clause protects a criminal defendant from being subjected to multiple prosecutions for the same offense.  U.S. Const. amend. V. Jeopardy is said to have attached when the jury is empaneled and sworn.  And, once jeopardy has attached, the defendant generally enjoys a constitutional right to have his case decided by that jury.  *United States v. Therve*, 764 F.3d 1293, 1298 (11th Cir. 2014).  But this rule is not absolute because a defendant's "valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments."  *Id.* (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)).  District courts are thus permitted to declare a mistrial where, taking into consideration all of the circumstances, there is a manifest necessity to do so.  *Id.*

The denial of a motion to dismiss an indictment on double jeopardy grounds is an appealable final order.  When preserved, we review a claim of double jeopardy for an abuse of discretion.  *United States v. Davis*, 708 F.3d 1216, 1221

10

(11th Cir. 2013). Defendant's contention that the district court prematurely declared a mistrial and instead should have given the jury more time was an argument that he preserved, and hence an abuse of discretion standard applies to that argument.

When a defendant fails to object to a matter that he later asserts on appeal, however, he has failed to preserve that issue for appeal purposes, meaning that the alleged misstep by the district court can be a basis for reversal only if it is deemed to be plain error. *United States v. Straub*, 508 F.3d 1003, 1008 (11th Cir. 2007). As to Defendant's present challenge to the district court's requirement that the jury return a unanimous verdict on the quantity of drugs involved, he voiced no objection at trial to this requirement, and accordingly a plain error standard of review applies.

### 2.    Defendant's Belated Complaint About the Court's Action

Defendant now asks us to forbid any retrial of him, at least as to the conspiracy count of the indictment.[5] He argues that we should do so because the

---

[5]   We do not understand Defendant to be arguing that an error by the district court in declaring a mistrial on Count 1 means that he should also walk free as to all the other counts of the indictment. Certainly, there would be no justification for such an outcome. By the third day of the five-day deliberation period, it was clear that the jury was deadlocked on the seven telephone counts. Neither Defendant, the Government, nor the court ever questioned that reality. And nothing ever happened in the next two days of deliberation to suggest that the jury was even considering those counts any more. Accordingly, it was clear that a mistrial would be declared on those seven counts, regardless of what the jury did on Count 1. Therefore, whatever the merits of Defendant's double jeopardy challenge to Count 1, we conclude that there was clearly a

district court could have accepted the jury's apparent finding of his guilt on Count 1 without insisting that it also agree on the quantity of drugs that he conspired to possess. The court's failure to follow that course of action, says Defendant, means that there was no manifest necessity for a mistrial. Oddly, although Defendant makes this argument the centerpiece of the present appeal, the issue never seemed significant enough to him at trial to warrant an objection to the court's decision. And Defendant had multiple opportunities to object. More than that, Defendant also failed even to articulate this objection in the motion to dismiss indictment that he later filed before the district court, whose order denying that motion is now the subject of this appeal.

By failing to object, Defendant never gave the district court an opportunity to consider the arguments that Defendant now makes on appeal and to correct its course, if that course was in fact ill-advised. To preserve an issue for appeal, "one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought." *Straub*, 508 F.3d at 1011 (quoting *United States v. Dennis*, 786 F2d 1029, 1042 (11th Cir. 1986)) (internal quotation marks omitted). When a party fails to object to a ruling that it later seeks to challenge on appeal, it can prevail only if the

manifest necessity to declare a mistrial on the other seven counts and, thus, Defendant should obviously face a retrial on those counts.

challenged ruling constituted plain error.  Under plain error review, a party must demonstrate that:  (1) an error occurred, (2) that was plain, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceeding.  *Id.* at 1008.  An error is plain if it violates either the plain meaning of a statute or constitutional provision or a holding of the Supreme Court or this Court.  *United States v. Pantle*, 637 F.3d 1172, 1174–75 (11th Cir. 2011).

Similarly, Defendant failed to assert in his motion to dismiss indictment this issue that he now raises on appeal.  Just as with an unobjected-to ruling, we review arguments not raised before the district court only for plain error.  *United States v. Perez,* 661 F.3d 568, 583 (11th Cir.2011); *United States v. Abraham*, 386 F.3d 1033, 1036 (11th Cir. 2004) (applying plain error review when the defendant raised a new argument on appeal in support of his motion for mistrial).

We thus review Defendant's present claim for plain error and conclude that, even if erroneous, the district court's now-challenged decision was not plainly erroneous.

### 3.    Application of Plain Error Standard

As noted, because he never objected or called to the district court's attention any concern about the court's belief that the jury had to agree unanimously on the quantity of the drugs at issue, Defendant can prevail on this present claim only if

13

he can first show that the court committed error and that this error was plain. Assuming for purposes of this appeal that the district court erred, we conclude that this error was not plain. For an error to be considered plain, there must be a statute or controlling authority from either this Court or the Supreme Court that squarely supports the Defendant's argument. *See Pantle*, 637 F.3d at 1174–75. Further, the Supreme Court has instructed us that plain error review should be exercised sparingly and only in circumstances in which a miscarriage of justice would otherwise occur. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). We, ourselves, have noted that the plain error rule "places a daunting obstacle before [the appellant]." *Id*. (internal citation omitted).

On appeal, Defendant has failed to grapple with the plain error standard of review. He does not mention it in his opening brief and, even though the Government relied on this standard of review in its own brief, Defendant's reply brief is silent as to how he can hurdle that standard in this case. We, ourselves, have found no case on point that would have clearly alerted the district court to its obligation to accept the jury's partial verdict on the specific facts of this case. In fact, we appear to be the first circuit court to be confronted with this specific question. The only federal case cited by Defendant is a 1977 Sixth Circuit case on which we find no other federal circuit court to have relied: *Wallace v. Havener*,

14

552 F.2d 721, 723 (6th Cir. 1977).[6]  On federal habeas review, the Sixth Circuit concluded that the state trial court abused its discretion when, over the objection of the defendant, it refused to accept the jury's partial verdict on four counts of a five-count indictment.  As a result, the court concluded that the Double Jeopardy Clause precluded a retrial on those counts.  *Id.*

Defendant argues that the district court here likewise abused its discretion in failing to accept the jury's partial verdict on Count 1.  But *Wallace* is quite distinct, factually, from this case, and it is not an Eleventh Circuit case.  We repeat, "[T]here can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."  *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

Even were we to assume that the district court erred and that this error was plain, Defendant would still have to demonstrate that his substantial rights were undermined by the error and that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings.  *See Rodriguez*, 398 F.3d at 1298 ("If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness,

---

[6]  In *Wallace*, the jury in a state trial had announced, without disclosing its verdict, that it had reached verdicts on four counts of the indictment charging the defendant with shooting with intent to kill and with illegally possessing a firearm indictment.  But it also indicated that it could not reach a verdict on the armed robbery count.  Over the objection of defense counsel, who asked the court to accept whatever verdicts the jury had reached, the state trial court declared a mistrial as to all counts.  552 F.2d at 723.

integrity, or public reputation of judicial proceedings." *Id.* (quotations and internal marks omitted)).

Given his failure to object to the court's requirement that the jury unanimously determine quantity—and once even indicating his disagreement that the jury could return a verdict on guilt, without also deciding the question of quantity—Defendant cannot show that the fairness of his proceedings were undermined by the court's refusal to accept the jury's partial answer to the questions concerning the conspiracy count. Indeed, the outcome that Defendant now advocates would diminish the public reputation of judicial proceedings. Specifically, at the time the district court was deciding how to handle the jury's inability to decide unanimously the drug-quantity question, Defendant had clearly dodged, at least temporarily, a conviction on the seven telephone counts on which the jury had deadlocked. Seemingly, all that stood between Defendant and a conviction on the sole remaining conspiracy count was the district court's insistence that the jury be required to unanimously decide the quantity of drugs attributable to Defendant: something the jury over five days had not been able to do. One can understand why, in such a circumstance, a defendant might choose not to object when the trial court takes an action that effectively prevents the jury from rendering a verdict of guilty.

16

It is one thing for a defendant to pursue a strategy that will achieve at least a temporary reprieve from a possible conviction.  It is quite another, however, for him to try to render permanent that reprieve by switching legal gears after the trial and attacking the court's decision on a new ground that, if successful, will give the defendant a pass altogether on the criminal charge.  And if Defendant's Double Jeopardy argument were to succeed here, that is what he would have accomplished.[7]  Defendant's effort to have his cake and eat it too would produce an outcome that does not serve the "fairness, integrity, and public reputation of judicial proceedings."

Accordingly, we conclude that Defendant failed to demonstrate that the district court plainly erred in refusing to accept the jury's verdict on Defendant's guilt as to the conspiracy count, given the jury's inability to determine the drug quantity and given Defendant's failure to object.[8]

---

[7]  The premise of Defendant's Double Jeopardy argument is that the jury had effectively convicted him on the conspiracy count and that the only remaining step necessary to finalize that decision was the court's agreement to accept the partial verdict.  Yet, nowhere does Defendant offer to accept, as appropriate relief for a successful challenge, a guilty verdict on the conspiracy count, with the sentencing options to be provided by that part of the statute providing the lowest penalties.

[8]  We decide this issue on a plain error standard of review, meaning that our affirmance does not necessarily indicate our endorsement of the district court's premise that the jury had to reach a unanimous decision verdict on drug quantity in order to render a verdict.  Because the briefing before us is insufficient to permit a decision on that underlying question, we do not resolve that issue here.

### B.  **Declaration of Mistrial without a Manifest Necessity**

Defendant also repeats the argument that was the basis for his motion to dismiss:  specifically, that the district court prematurely declared a mistrial less than four hours after it had delivered the *Allen* charge and before it was clear that the jury would be unable to return a verdict.  At trial, Defendant had requested that the jury be allowed to continue its deliberations as to the drug-quantity question.  Thus, as the Government concedes, Defendant has preserved this claimed error, and it is therefore reviewed for an abuse of discretion.

A district court abuses its discretion in denying a motion to dismiss an indictment on double jeopardy grounds when a mistrial ruling was not manifestly necessary.  *Davis*, 708 F.3d at 1221.  Whether manifest necessity exists is a fact-intensive inquiry, and we review the entire record without limiting ourselves to the district court's findings.  *Id.*  When a mistrial is granted over the defendant's objection, the Government bears the heavy burden of justifying it.  *United States v. Chica*, 14 F.3d 1527, 1531 (11th Cir. 1994).

Here, the district court declared a mistrial due to a jury's inability to reach a verdict.  This ground, which is the "classic basis for a proper mistrial," is generally accorded great deference.  *Therve*, 764 F.3d at 1298–99 (citing *Washington*, 434 U.S. at 509–10).  And for good reason, because the district court is in the best position to assess the relevant factors in determining whether the jury will be able

18

to reach a just verdict upon continued deliberation. *Washington*, 434 U.S. at 510 n.28. Indeed, a trial court will generally have a strong incentive to obtain a verdict in a case and thereby avoid the need for a second trial. Nevertheless, the district court must exercise sound discretion in deciding to declare a mistrial, and close appellate scrutiny is warranted where "the trial judge acts for reasons completely unrelated to the trial problem which purports to be the basis for the mistrial ruling." *Id.*

We consider a number of relevant factors in determining whether a mistrial was manifestly necessary, including the length of the trial and complexity of the issues involved, the length of the jury's deliberation, and the jury's communications with the trial judge, which are particularly significant. *United States v. Gordy*, 526 F.2d 631, 635–36 (5th Cir. 1976)[9] (noting that the jury's statement that it is hopelessly deadlocked is a crucial—but not necessarily determinative—factor of whether further deliberations might be helpful); *see also Therve*, 764 F.3d at 1300 (affirming the declaration of a mistrial in light of the jury's statements that it was deadlocked, the short duration of the trial, and the straightforward nature of the issues). Additionally, we consider whether the district court afforded the parties an opportunity to explain their positions and to

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit Court of Appeals handed down before October 1, 1981.

make suggestions regarding possible alternatives to declaring a mistrial.  *Id.* at 1301.  We will uphold the district court's decision "where the record, considered as a whole, indicates that the trial judge . . . carefully considered the alternatives and did not act in an abrupt, erratic, or precipitate manner."  *Grandberry v. Bonner*, 653 F.2d 1010, 1014 (5th Cir. Unit A Aug. 1981).

According to Defendant, because the court (1) instructed the jury to return to the courtroom if it could not reach a unanimous verdict and (2) told the jury it could be leisurely in its deliberations, the court should have either waited for the jury to announce it was still deadlocked or consulted the jury before declaring a mistrial.  But by the time the jury received the *Allen* charge, it had been deliberating over the course of four days, after just a two-day trial, with much of that time having been spent in an effort to decide this quantity question.  In fact, after an overnight recess and four more hours of post-*Allen* charge deliberation, the jury had still failed to reach verdict on this single discrete matter.

Further, the court gave the parties an opportunity to be heard before deciding to call a halt to the proceedings.  In fact, we must remember that just the afternoon before, when the jury had announced itself deadlocked, Defendant opposed the giving of an *Allen* charge, which action arguably implied his belief that a mistrial should have been declared right then.  It is somewhat awkward for Defendant to now argue that the court should have given the jury even more time to deliberate

20

when earlier Defendant had effectively objected to the additional time that the court had allowed them.

Admittedly, it would have been prudent for the district court to have called the jury back into the courtroom to formally confirm, again, its inability to reach a verdict.  Had that occurred, we would likely not be facing this issue.  But, nonetheless, based on all the above facts, we conclude that the court did not abuse its discretion by declaring a mistrial.

## C.  Declaration of a Mistrial Based on Impermissible Considerations

Finally, Defendant argues that in declaring a mistrial, the district court relied on impermissible considerations and failed to consider reasonable alternatives. Defendant did not adequately raise these arguments in his motion to dismiss, so we review for plain error.  Having carefully reviewed the record, we are unpersuaded that the court considered any impermissible factors,[10] and conclude that it adequately considered alternatives to a mistrial.

---

[10]  Because of scheduling conflicts, the district court judge relied on other judges to supervise jury deliberations during several late afternoon hours of deliberation.  In explaining to the jury this arrangement, the judge joked that he would have to spend much of his salary compensating these judges for their "babysitting" duties.  Contrary to Defendant's suggestion that the judge had therefore revealed a financial incentive to stop the proceedings, it is obvious that the judge was not actually paying his colleagues to help him out and that his comments were intended to be humorous.

21

## III.  Conclusion

For the above reasons, we affirm the district court's denial of Defendant's

motion to dismiss the indictment.

**AFFIRMED.**